IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Alkhadr Abdullah Al Yafie** | ) | |
| **Tofiq Nasser Awad Al Bihani** | ) | |
| **Riyadh Ateek Ali Abdu Al Haj** | ) | |
|     **Detainees,** | ) | |
|     **Guantanamo Bay Naval Station** | ) | |
|     **Guantanamo Bay, Cuba;** | ) | **PETITION FOR WRIT** |
| | ) | **OF HABEAS CORPUS** |
| **Ali Yahya Mahdi** | ) | |
| **Adnan Al Bihani,** | ) | **No. _____** |
| **Mahmood Ateek Ali Abdu Al Haj** | ) | |
|     **as the Next Friends of Petitioners** | ) | |
|     **Alkhadr Abdullah Al Yafie** | ) | |
|     **Tofiq Nasser Awad Al Bihani** | ) | |
|     **Riyadh Ateek Ali Abdu Al Haj** | ) | |
| | ) | |
| *Petitioners,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GEORGE W. BUSH,** | ) | |
|     **President of the United States** | ) | |
|     **The White House** | ) | |
|     **1600 Pennsylvania Ave., N.W.** | ) | |
|     **Washington, D.C. 20500;** | ) | |
| | ) | |
| **DONALD RUMSFELD,** | ) | |
|     **Secretary, United States** | ) | |
|     **Department of Defense** | ) | |
|     **1000 Defense Pentagon** | ) | |
|     **Washington, D.C. 20301-1000;** | ) | |
| | ) | |
| **ARMY BRIG. GEN. JAY HOOD,** | ) | |
|     **Commander, Joint Task Force - GTMO** | ) | |
|     **JTF-GTMO** | ) | |
|     **APO AE 09360; and** | ) | |
| | ) | |
| **ARMY COL. MIKE BUMGARNER,** | ) | |
|     **Commander, Joint Detention** | ) | |
|         **Operations Group, JTF - GTMO** | ) | |
|     **JTF-GTMO** | ) | |
|     **APO AE 09360,** | ) | |
| | ) | |
| *Respondents.* | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioners Alkhadr Abdullah Al Yafie, Tofiq Nasser Awad Al Bihani, and Riyadh Ateek Ali Abdu Al Haj seek the Great Writ. Each Petitioner is a citizen of Yemen. Petitioner Alkhadr Abdullah Al Yafie acts on his own behalf and through his Next Friend, Ali Yahya Mahdi. Petitioner Tofiq Nasser Awad Al Bihani acts on his own behalf and through his Next Friend, Adnan Al Bihani, his brother. Petitioner Riyadh Ateek Ali Abdu Al Haj acts on his own behalf and through his Next Friend, Mahmood Ateek Ali Abdu Al Haj, his brother.

As a result of actions taken by the President of United States, the other Respondents, and their subordinates, Petitioners have not been properly classified, through any legitimate legal process, as either civilians, prisoners of war, "enemy combatants," or otherwise, and are being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). Their detention is indefinite, without lawful basis, without charge, and without access to counsel or any fair process by which they might challenge that detention. In the course of that detention, which has now spanned several years, Petitioners have been, and are continuing to be, subjected to abuse in the form of cruel, inhuman, or degrading treatment. Petitioners are being held and abused under color and authority of the Executive, in violation of the Constitution, laws, and treaties of the United States, in violation of the fundamental due process principles of the common law, and in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie or to establish in this Court a lawful basis for Petitioners' detention. This Court should also order injunctive and declaratory relief.

# I.
# JURISDICTION

1.     Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3), and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely upon Fed. R. Civ. P. 57.

2.     This Court is empowered to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

# II.
# PARTIES

3.     Petitioner Alkhadr Abdullah Al Yafie ("Al Yafie") is a Yemeni citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner Al Yafie desires undersigned counsel to file this petition on his behalf.     *See* Exhibit A, Authorizations and Acknowledgments; Acknowledgment of Representation.

4.     Petitioner Ali Yahya Mahdi is a detainee familiar with Petitioner for the duration of their incarceration in Guantánamo. *Id.* He is a Yemeni citizen. *Id.* Because his friend and co-detainee has been denied access to legal counsel and to the courts of the United States, Ali Yahya Mahdi acts as his Next Friend. *Id.* Upon information and belief, on his own and through the help of friends, Petitioner Al Yafie has tried repeatedly to contact his relatives and speak to authorities about his condition and unlawful custody.     *Id.*

Petitioner Ali Yahya Mahdi acts as next friend in order to assist Petitioner Al Yafie in seeking redress for these grievances.

5.    Petitioner Tofiq Nasser Awad Al Bihani ("Al Bihani") is a Yemeni citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner Al Bihani desires undersigned counsel to file this petition on his behalf. *See* Exhibit A, Authorizations and Declarations.

6.    Petitioner Adnan Al Bihani is Petitioner Tofiq Nasser Awad Al Bihani's brother. *Id.* He is a Yemeni citizen. *Id.* Because his brother has been denied access to legal counsel and to the courts of the United States, Adnan Al Bihani acts as his Next Friend. *Id.* On his own and through the help of friends, Petitioner Tofiq Nasser Awad Al Bihani has tried repeatedly to contact his family and speak to authorities about his condition and unlawful custody. *Id.* Petitioner Adnan Al Bihani acts as next friend in order to assist Petitioner Tofiq Nasser Awad Al Bihani in seeking redress for these grievances.

7.    Petitioner Riyadh Ateek Ali Abdu Al Haj ("Al Haj") is a Yemeni citizen who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner desires undersigned counsel to file this petition on his behalf. *See* Exhibit A, Authorizations and Declarations.

8.    Petitioner Mahmood Ateek Ali Abdu Al Haj is Petitioner Riyadh Ateek Ali Abdu Al Haj's brother. *Id.* He is a Yemeni citizen. *Id.* Because his brother has been denied access to legal counsel and to the courts of the United States, Petitioner Mahmood Ateek Ali Abdu Al Haj acts as his Next Friend. *Id.* On his own and through the help of friends, Petitioner Al Haj has tried repeatedly to contact his family and speak to authorities about his condition and unlawful custody. *Id.* Petitioner Mahmood Ateek Ali Abdu Al Haj

acts as his next friend in order to assist Petitioner Al Haj in seeking redress for these grievances.

9.  Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are being detained pursuant to President Bush's authority as Commander-in-Chief, allegedly under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie's unlawful detention and is sued in his official capacity.

10. Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie. He is sued in his official capacity.

11. Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie and is sued in his official capacity.

12. Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr

Abdullah Al Yafie are presently held. He is the immediate custodian responsible for Petitioners' detention and is sued in his official capacity.

13. Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

14. Because Respondents have imposed improper conditions of detention on all Petitioners, holding them *incommunicado* and interfering with any contact between Petitioners and their friends, their families, or their counsel, all statements of fact in this petition about the detainees, whether or not expressly so stated, are on information and belief, as it has been impossible for Petitioners' counsel to communicate directly with Petitioners to verify these facts due to the conditions Respondents have imposed on their detention.

15. Upon information and belief, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants under the definitions adopted by the government in civil and military proceedings.

16. Upon information and belief, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are not, nor has any ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United

States there." See *Hamdi v. Rumsfeld*, 524 U.S. 507, 124 S. Ct. 2633, 2639 (plurality) (2004).

17.  Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie each seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

18.  Upon information and belief, at the time of their seizure and detention, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie were not members of the Taliban Government's armed forces or Al Qaeda. Prior to their detention, Petitioners did not commit any violent act against any American person or property. Petitioners had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda. Petitioners remain incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

19.  Upon information and belief, Petitioners have each requested that the United States provide each petitioner with access to his family and legal counsel. To date, the United States has not provided Petitioners with such access.

20.  Petitioners have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

21.   Upon information and belief, Petitioners desire to pursue in United States courts every available legal challenge to the lawfulness of their detention.

### The Joint Resolution

22.   In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

23.   As Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie assert they did not participate in the armed conflict at any point in time, they are not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

### The Executive Order

24.   On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

   i.     is or was a member of the organization known as al Qaeda;
   ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
   iii.   has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Executive Order was not authorized or directed by Congress.

25.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order appears to override the possibility of such review by any court. The Executive Order authorizes indefinite and unreviewable detention of any person, based on nothing more than President Bush's written determination that an individual is subject to its terms.

26.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

27.    Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioners are subject to the Executive Order.

28.    Upon information and belief, Petitioners are not properly subject to the Executive Order.

29.    Upon information and belief, Petitioners have not been, and are not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, and/or the laws and usages of war in that Petitioners have been denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

### Guantánamo Bay Naval Station

30.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

31.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 524 U.S. 466, 124 S. Ct. 2686, 2698 (June 28, 2004).

32.    On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie to Guantánamo, where they have been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

33.    Since gaining control of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie the United States military has held them virtually *incommunicado.*

34.     Upon information and belief, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali
        Abdu Al Haj, and Alkhadr Abdullah Al Yafie have been or will be interrogated
        repeatedly by agents of the United States Departments of Defense and Justice, and the
        Central Intelligence Agency, though they have not been charged with an offense and have
        not been notified of any pending or contemplated charges.  They have not appeared
        before a lawful military or civilian tribunal, and have not been provided access to counsel
        or the means to contact and secure counsel.  They have not been adequately informed of
        their rights under the United States Constitution, the Geneva Convention, the
        International Covenant on Civil and Political Rights, the American Declaration on the
        Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or
        customary international law.   Indeed, Respondents have taken the position that
        Petitioners should not be informed of these rights.  As a result, Petitioners lack any ability
        to protect or to vindicate their rights under domestic and international law.

35.     Upon information and belief, Petitioners have been forced to provide involuntary
        statements to Respondents' agents at Guantanamo.

36.     Upon information and belief, Petitioners have been held under conditions that violate
        their constitutional and international rights to dignity and freedom from torture and from
        cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Amnesty International,
        "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at
        83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights,
        "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3
        (2005); United Nations Press Release, "United Nations Human Rights Experts Express
        Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005;
        International Committee of the Red Cross, Press Release, "The ICRC's Work at

Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

37.    Upon information and belief, Petitioners have been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture or other forms of cruel, inhuman, or degrading treatment; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

38.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, forced nudity and humiliation, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism:*

*Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

39.    In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

40.    Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,* Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18; Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Amnesty International, *Guantánamo: An Icon of Lawlessness,* Jan. 6, 2005, at 3-5; Neil A. Lewis, "Fresh Details Emerge on Harsh

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

41.    In fact, many of the egregious interrogation techniques used in the now notorious Abu Ghraib detention center and other detention facilities in Iraq—such as the use of aggressive dogs to intimidate detainees, sexual humiliation, stress positions, and sensory deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Wash. Post*, July 14, 2005 at A1.

42.    The unlawful interrogation techniques used by Respondents at Guantánamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their habeas lawyers for the express purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

43.    In addition, military defense lawyers have been instructed to limit their representation of detainees in a manner that would operate to the detriment of their clients in violation of due process requirements. *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005, at A25 (Late Ed.).

44. Respondents, acting individually or through their agents, have stated that the humanitarian limitations which normally apply to the U.S. military's use of coercive interrogation techniques under the auspices of the Department of Defense, *do not apply* to interrogations conducted by CIA agents or other specially-designated government officers assigned to such work. *See* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

45. In published statements, President Bush and Secretary Rumsfeld, and the predecessors of Hood and Bumgarner, respectively, Lehnert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held 'We have to look at Camp X-ray as a work in progress [...]' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards."); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of

foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

46. According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24, 2005).

47. Counsel for Respondents have also consistently maintained that the United States may hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, Statements of Principle Deputy Associate Attorney Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

48. In fact, the Government has failed to release a number of Guantánamo detainees even after it has determined that the detainees are "no longer enemy combatants." *See* Robin Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005, at C4.

49. The Government has acknowledged its plan to begin constructing a new, more permanent detention facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

**Rendition**

50.   During interrogations, detainees have also been threatened with rendition or transfer to

countries that permit indefinite detention without charge or trial and/or routinely practice

torture.  Upon information and belief, the United States has secretly transferred detainees

to such countries without complying with the applicable legal requirements for

extradition.  This practice, known as "extraordinary rendition," is used to facilitate

interrogation by subjecting detainees to torture and other forms of cruel, inhuman, and

degrading treatment.  *See* Jane Mayer, "Outsourcing Torture: The Secret History of

American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

51.   The U.S. government's "extraordinary rendition" program has been documented by key

American and international news organizations, including the *Washington Post*, *The Los

Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to

news accounts:

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source.  The suspects have been taken
> to countries . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects,"

*Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for

Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'

depend on arrangements between the United States and other countries, such as Egypt . . .

that agree to have local security services hold certain suspects in their facilities for

interrogation by CIA and foreign liaison officers.").

52.    In fact, the Government has recently announced its intention to render many Guantánamo detainees to countries which have a documented record of human rights violations, including state-sponsored torture. *See, e.g.,* Matthew Waxman, "Beyond Guantanamo," *Wash. Times*, Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Times*, Aug. 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is Being Transformed, U.S. Says," *NY Times*, Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA Times*, Aug. 5, 2005, at A18.

53.    Moreover, upon information and belief, the Government is conditioning the transfer or rendering of detainees to their countries of origin on the requirement that the home country imprison the detainee without regard to the detainee's individual factual or legal situation. *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post*, August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005 (available from LEXIS, MWP90 file) ("The US authorities declared a few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

54.    Upon information and belief, Petitioners have legitimate fear of indefinite detention and imminent harm if returned to Yemen, or rendered to any other country. *See, e.g., Torture and secret detention,*

(http://web.amnesty.org/library/index/engamr511082005, visited December 08, 2005)

55.    Upon information and belief, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali

Abdu Al Haj, and Alkhadr Abdullah Al Yafie are at risk of being rendered, returned or

transferred without lawful process to a country that permits indefinite detention without

process and/or engages in torture or other forms of cruel, inhuman, or degrading

treatment during interrogation and detention.

**IV.**
**CAUSES OF ACTION**

FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.    By the actions described above, Respondents, acting under color of law, have violated

and continue to violate common law principles of due process as well as the Due Process

Clause of the Fifth Amendment to the Constitution of the United States.  President Bush

has ordered the prolonged, indefinite, and arbitrary detention of individuals including

Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr

Abdullah Al Yafie, without due process of law, and the remaining Respondents have

implemented those orders.  Respondents' actions deny Petitioners the process accorded to

persons seized and detained by the United States military in times of armed conflict as

established by, *inter alia*, Articles 3 and 5 of the Third and Fourth Geneva Conventions,

the common law, and customary international law as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic

judicial decisions, and other authorities.

58.    To the extent that the detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh

Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie purports to be authorized by the

Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

59.    To the extent that the detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioner's detention is unlawful.

60.    Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioners to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

63.    Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie the process accorded to persons seized and detained

by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

66. Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241(c)(3).

67. Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

68. Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

69. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70. By the actions described above, Respondents have denied and continue to deny Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

71. Because Respondents are detaining Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie "under or by color of the authority of the United States," they are violating 28 U.S.C. § 2241(c)(1), and because Respondents are detaining Petitioners "in violation of the Constitution or laws or treaties

of the United States," they are also violating 28 U.S.C. § 2241(c)(3).  Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are therefore entitled to relief.

72.    Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie in order to obtain coerced information or confessions from them, to punish or intimidate Petitioners, or for other purposes.  Among other abuses, Petitioners have been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture or other forms of cruel, inhuman, or degrading treatment; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

75.   The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.   Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie.

77.   Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie were forced to suffer severe physical and psychological abuse and agony and are entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

78.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.   By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and

defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

80.  As a result of Respondents' unlawful conduct, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie been and are forced to suffer severe physical and psychological abuse and agony, and are therefore entitled to declaratory and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
CRUEL, INHUMAN OR DEGRADING TREATMENT)

81.  Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

82.  The acts described herein had the intent and the effect of grossly humiliating and debasing each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie, forcing each to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

83.  The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

84.  Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie.

85.  Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie were forced to suffer severe physical and psychological abuse and

agony and are entitled to declaratory and injunctive relief as well as other relief as the court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

86.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87.    The acts described herein constitute arbitrary arrest and detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

88.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

89.    As a result of Respondents' unlawful conduct, each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

90.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

91.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

92.    As a result of Respondents' unlawful conduct, each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION - UNLAWFUL DETENTION)

93.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

94.    Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie assert that they are not, nor have they ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 524 U.S. 507, 124 S. Ct. 2633, 2642 n.1 (2004).

95.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie and transfer them to military detention, and by authorizing and ordering their continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie.

96.    The military seizure and detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioners.

97.    To the extent that Respondents assert that their authority to detain Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

98.    Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF
## (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

99.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

100.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon each of Petitioners' Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioners' attorney-client privilege, their work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

101.    Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
## (DUE PROCESS CLAUSE - RENDITION)

102.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

103.    Upon information and belief, each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of a Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioners' rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

104.    Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
### (CONVENTION AGAINST TORTURE AND
### CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

105.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

106.   Upon information and belief, each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of a Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150, entered into force Apr. 22, 1954.

107.   Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - RENDITION)

108.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

109.   Upon information and belief, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of a Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

110.   Accordingly, Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## V.

## STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(B)(3)

111.   Under the unique and extraordinary circumstances of this case, the factual allegations

made in preceding paragraphs 3, 4, 5, 7, 14, 15, 16, 18, 19, 21, 27, 28, 29, 34, 35, 36, 37,

50, 53, 54, 55, 103, 106, 109, et al, that are made upon information and belief are made

pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure on the basis that those

allegations "are likely to have evidentiary support after a reasonable opportunity for

further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Also upon information and

belief, each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj,

and Alkhadr Abdullah Al Yafie desires undersigned counsel to file this petition on his

behalf.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.   Grant the Writ of Habeas Corpus and order Respondents to release each of Petitioners

Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al

Yafie from his current unlawful detention;

2.   Order that each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al

Haj, and Alkhadr Abdullah Al Yafie be brought before the Court or before a Magistrate

Judge assigned by the Court at a convenient facility to conduct proceedings under the

supervision of the Court to vindicate his rights;

3.   Order that Petitioners cannot be rendered or transferred to any other country without the

specific, written agreement of each Petitioner and Petitioner's counsel while this action is

pending;

4.    Order that Petitioners cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that a Petitioner will be subject to indefinite detention or torture;

5.    Order Respondents to allow counsel to meet and confer with each of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie in private and unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafi;

8.    Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the treaties of the United States and customary international law;

9.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners Tofiq Nasser Awad Al Bihani, Riyadh Ateek Ali Abdu Al Haj, and Alkhadr Abdullah Al Yafie without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the treaties of the United States, and customary international humanitarian law; and

10.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the United States Constitution, federal statutory law, and international law, including, if necessary, designating Petitioner Adnan

Al Bihani to act as Next Friend of Petitioner Tofiq Nasser Awad Al Bihani; Petitioner

Mahmood Ateek Ali Abdu Al Haj to act as Next Friend of Petitioner Riyadh Ateek Ali

Abdu Al Haj; and Petitioner Ali Yahya Mahdi to act as Next Friend of Petitioner Alkhadr

Abdullah Al Yafie.


Dated:        December 14, 2005                Respectfully submitted,

                                              Counsel for Petitioners:

                                              David Kronenberg
                                              Douglas B. Sanders
                                              Eric W. Sievers
                                              Baker & McKenzie LLP
                                              130 East Randolph Drive
                                              Chicago, Illinois 60601
                                              Tel: 312 861 8000
                                              Fax: 312 861 2899


                                              _____
                                              George M. Clarke III
                                              Baker & McKenzie LLP
                                              815 Connecticut Avenue, NW
                                              Washington, D.C. 20006-4078
                                              Tel: 202 452 7000
                                              Fax: 202 452 7074


                                              *Of Counsel*
                                              Barbara J. Olshansky (NY0057)
                                              Director Counsel
                                              Gitanjali S. Gutierrez (GG1234)
                                              Tina Monshipour Foster (TF5556)
                                              CENTER FOR CONSTITUTIONAL RIGHTS
                                              666 Broadway, 7th Floor
                                              New York, New York 10012
                                              Tel: (212) 614-6439
                                              Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated:    December 14, 2005

George M. Clarke III
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006-4078
Tel: 202 452 7000
Fax: 202 452 7074

**APPENDIX A: Authorizations and Acknowledgments**

## Acknowledgement of Representation

Pursuant to Section III.C.2 of the "Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba," I hereby certify that I am represented by undersigned counsel who has filed a petition for a writ of habeas corpus of other federal court litigation on my behalf, and who is assisting me with my legal representation in other ways related to my seizure and detention by the United States.

If counsel if forced to withdraw from representing me for any reason, or it the representation is terminated in any way, any remaining counsel is authorized to secure other counsel for me. In default of this , I hereby authorize the Center for Constitutional Rights to assign anther counsel for me. My counsel shall inform the Department of Defense immediately of any change in circumstances in my representation.

This acknowledgement of representation applies to undersigned counsel, and also to the following lawyers who are assisting with my representation:

ISNc 34 ع ٢٤ الخضر                                    _____
_____                              Signature of Counsel
Signature of Detainee

AL KHADR ABDULLAH AL YAFIE                            _____
_____                              Print name of Counsel in English
Print Detainee name in English

الخضـر عبدالله اليافعي
_____
Print name of Detainee in Native Language (if other than English)

Date: 9/5/2005/ ٢٥-٧٠٩

UNCLASSIFIED          FOUO

10023-16956 NY:530572.1

GTMO May 09'" 2005

TO ALLEN & OVERY                          ALI YAHYA MAHDI
                                          CAMP DELTA
                                          GUANTANAMO BAY
                                               CUBA

       I hope this letter finds you well and in good health.
I would Like you to find a lowyer for these detainees.
1- MOHAMED NASEER YAHYA ABDULLAH
2- AL KHADR ABDULLAH AL YAFIE   TEC: 73808604    (YEMEN)
3- AMEUR Mammar
On Vouluntary basis as they have no funds to pay you, and
I would Like you also to send me some Envolopes to write you
and News, and some papers of (Acknowledgement of Representation.)
I will be Very thankful.

                              with Best wishes.

NOTE: send me small envolopes.


**UNCLASSIFIED**

Date: June 17, 2005

## Authorization

I am Adnan Al Bihan, and I have had the concept of 'next friend' explained to me in my native language. I wish to act as next friend for my brother, who is a prisoner being held in Guantanamo Bay, and whose name is Tofig Nasser Awadh Al-Bihani (the 'prisoner'). I hereby authorize Tina Foster (and the Center for Constitutional Rights), as well as Clive Stafford Smith (and Justice In Exile), and any person assigned by these lawyers, to act on my behalf and on the prisoner's behalf, to secure any documents and information concerning the prisoner that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the courts of the United States, and in any other legal forum available. I am sure that he would want me to assert these rights. He is a citizen of Yemen.

_____

Next Friend

Witnessed: _____

Tina Monshipour Foster

Print Name:

Date: _____, 2005

## Authorization

I am _____ محمود عتيق على عبدة الجاج , and I have had the concept of 'next friend' explained to me in my native language. I wish to act as next friend for my _____ أخي , who is a prisoner being held in Guantanamo Bay, and whose name is رياض عتيق على عبدة الجاج _____ (the 'prisoner').  I hereby authorize Tina Foster (and the Center for Constitutional Rights), as well as Clive Stafford Smith (and Justice In Exile), and any person assigned by these lawyers, to act on my behalf and on the prisoner's behalf, to secure any documents and information concerning the prisoner that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the courts of the United States, and in any other legal forum available. I am sure that he would want me to assert these rights.  He is a citizen of _____.

_____
Next Friend

Witnessed:

_____

Print Name: