IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Alkhadr Abdullah Al Yafie**<br>**Tofiq Nasser Awad Al Bihani**<br>　　Detainees,<br>　　　Guantanamo Bay Naval Station<br>　　　Guantanamo Bay, Cuba;<br><br>**Ali Yahya Mahdi**<br>**Adnan Al Bihani,**<br>　　as the Next Friends of Petitioners<br>　　　Alkhadr Abdullah Al Yafie<br>　　　Tofiq Nasser Awad Al Bihani<br><br>*Petitioners,*<br><br>v.<br><br>**GEORGE W. BUSH,** *et al.,*<br><br>*Respondents.* | No. 1.05cv02399 |

**MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE THE COURT
AND COUNSEL FOR PETITIONER WITH 30-DAYS' ADVANCE NOTICE OF ANY
INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners respectfully move for an order requiring Respondents to provide the Court and counsel for Petitioners with advance notice of any intended removal of Petitioners from Guantánamo Bay Naval Base in Cuba. On information and belief, Respondents have contemplated or are contemplating removal of Petitioner from Guantánamo to foreign territories for torture or indefinite imprisonment without due process of law. Petitioner is requesting the advance notice to enable their counsel to contest any such removal from Guantánamo and preserve the jurisdiction of the Court in this matter.

## STATEMENT OF FACTS

Each Petitioner is a citizen of Yemen who is being detained as an "enemy combatant" at the Guantánamo Bay Naval Base in Cuba. As detailed in the habeas petition he previously filed on December 14, 2005, each Petitioner asserts he was not properly or legally classified as an "enemy combatant" and contends he is being detained in violation of the Constitution, treaties and laws of the United States.

Each Petitioner in the instant case has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture or to continue their indefinite detention without due process.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7. According to the *Washington Post*,

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, [2002], at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1.  The countries to which detainees may be brought are known to practice torture.  *See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, [2005], at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba.  During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod."  And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . .  Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, *Outsourcing Torture* at [¶ 54.] The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of torture. In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent." Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c).

Petitioner also has reason to fear that he will be transferred into the custody of the government of Yemen or a third country for continued illegal detention without due process of law. On information and belief, a number of detainees have been removed to countries – including Pakistan and Kuwait – where they have been imprisoned and denied access to the courts. Moreover, recent news reports indicate that the United States government has contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries." Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioners' requests meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Each Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioners are likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Petitioners stand to suffer immeasurable and irreparable harm – from to torture to possible death – at the hands of a foreign government. Transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioners' rights to adjudicate the legality of their detention in this Court. By contrast, Respondents, who have already held Petitioners for several years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioners from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request.

Petitioners are likely to succeed on the merits of their claims. Petitioners have properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). This Court, in *In re Guantanamo detainees*, 335 F.Supp. 2d 443 (D. D.C. 2005), previously ruled that detainees in similar circumstances to Petitioners stated actionable claims under the Due Process Clause and the Geneva Conventions. For the United States Government to remove Petitioners to countries that would afford no such protections would be to flout this principle and this ruling and defeat the Court's jurisdiction. Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the International Covenant on Civil and

Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to the Court and to counsel of any intended removal of Petitioner from the Court's jurisdiction. Even if the Executive Branch is persuaded that such an action is within its power, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or imprison him indefinitely.

## CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated:     January 12th, 2006                Respectfully submitted,

Counsel for Petitioners:

George Clarke
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006-4078, US
Tel: 202 452 7000
Fax: 202 452 7074

David Kronenberg
Douglas Sanders
Eric Sievers
Baker & McKenzie LLP
130 East Randolph Drive
Chicago, Illinois 60601
Tel: 312 861 8000
Fax: 312 861 2899


_____

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Gitanjali S. Gutierrez (GG1234)
Tina Monshipour Foster (TF5556)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Army Col. Brice Gyurisko**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Brig. Gen. Hood**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

**Army Col. Brice Gyurisko**
UNITED STATES ARMY
Army - Pentagon
Washington, D.C. 20310-0200

On this the 12th day of January, 2006.

*/s/ L. Weis*