IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Al Yafie,** *et al.,*<br>   *Petitioners/Plaintiffs,*<br><br>v.<br><br>**GEORGE W. BUSH,** *et al.,*<br>   *Respondents/Defendants.* | )<br>)<br>)<br>)<br>)   Civil Action No. 05-cv-2399<br>)<br>)<br>)<br>) |

## PETITIONERS' REPLY IN SUPPORT OF
## MOTION FOR ENTRY OF PROTECTIVE ORDER

Petitioners hereby respectfully submit this memorandum in support of their Motion for Entry of Protective Order which moves this Court to enter in their cases the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, ("Protective Order" or "PO").[1] Respondents oppose this motion, for the most part relying on their interpretation of the Detainee Treatment Act of 2005, Pub. L. No 109-148, tit. X, 119 Stat. 2680 ("DTA"), enacted into law December 30, 2005. But regardless of the ultimate legal resolution of the interpretation that Respondents advance – and that resolution may take years to arrive – Petitioners require the assistance of Counsel now, and are entitled to that assistance, both for administrative proceedings under the DTA and in order to contest Respondents' expansive reading of the DTA's reach. "[T]he need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme

---

[1] The Amended Protective Order includes the following orders entered in *In re Guantánamo Detainee Cases*: Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004, (344 F. Supp. 2d 174 (D.D.C. 2004)); Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2005; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004. *See* Exhibits 1-3 to Petitioners' Motion for Protective Order.

Court determine that the DTA applies to those habeas cases currently pending in the District Court." *Adem v. Bush*, No. 05-723 (RWR) (AK), Mem. Op. at 22 n. 25 (D.D.C. Mar. 21, 2006) (dkt no. 36); *Sadar Doe v. Bush*, No. 05-1704 (JR)(LFO)(AK), Mem. Op. at 13 n. 14 (D.D.C. May 11, 2006) (dkt no. 33). "Forcing [a Petitioner] to wait until all such proceedings and appeals are concluded before permitting him to speak with his lawyer renders his right to counsel meaningless." *Adem, supra*. And, in fact, there is ample precedent for entry of the Protective Order by judges of this Court since the enactment of the DTA.[2]

The Supreme Court held in *Rasul v. Bush*, 542 U.S. 466, 484 (2004) that detainees such as Petitioners have a right to due process to contest their now-four-year incarceration. Petitioners expressed those due process rights by filing their habeas petitions with this Court. Respondents claim that certain procedures crafted by the military with reference to the DTA wholly replace Petitioners' habeas actions and provide equivalent "alternative" due process. Respondents further claim that the DTA instantly removed this Court's jurisdiction over those petitions even though they were pending at the time of its enactment.

Petitioners disagree with both these claims about the DTA, but this particular controversy need not take up the Court's time today because it is beside the point. Petitioners are entitled to due process and legal representation, and Respondents previously insisted on and negotiated the PO as a condition of that legal representation for every detainee, so in order for Petitioners to

---

[2] *See e.g.*, *Faizullah v. Bush*, 05-cv-01489 (D.D.C. April 21, 2006); *Sohail v. Bush*, 05-cv-00993 (D.D.C. April 21, 2006); *Al Salami v. Bush*, 05-cv-2452 (D.D.C. Apr. 14, 2006); *Zadran v Bush*, 05-cv-2367 (D.D.C., Apr. 12, 2006); *Alsaaei v. Bush*, 05-cv-2369 (D.D.C., Apr. 12, 2006); *Said v. Bush*, 05-cv-2384 (D.D.C., Apr. 12, 2006); *Al Shareef v. Bush*, 05-cv-2458 (D.D.C., Apr. 12, 2006); *Awad v. Bush*, 05-cv-2379, (D.D.C. Apr. 11, 2006); *Thabid v. Bush*, 05-cv-2398 (D.D.C., Mar. 21, 2006); *Razakah v. Bush*, 05-cv-2370 (D.D.C., Mar. 17, 2006); *Labed Ahmed v. Bush*, 05-cv-1234 (D.D.C., Mar. 2, 2006); *Wahab v. Bush*, 05-cv-886 (D.D.C., Jan. 10. 2006); *Mohammad v. Bush*, 05-cv-879 (D.D.C., Jan. 9, 2006); *Bostan v. Bush*, 05-cv-883 (D.D.C., Jan. 9, 2006); *Khiali-Gul v. Bush*, 05-cv-877 (D.D.C., Jan. 6, 2006).

receive the legal representation and the process they are due, under any interpretation of the DTA, they must have a protective order.

I.      **Petitioners Require the Assistance of Counsel**

It is difficult to contest the proposition that Petitioners require the assistance of counsel. Petitioners are foreign nationals who either do not speak or have only a very limited mastery of the English language; they are unfamiliar with both the American court system and American military justice procedures,[3] and have been incarcerated for over four years, virtually incommunicado, cut off from contact with any of their family, friends, or trusted advisers. Whether in habeas proceedings or before military Administrative Review Board hearings, whether the DTA ultimately is interpreted to strip this court of jurisdiction or not, it seems beyond argument that Petitioners cannot receive due and fair legal process without ever hearing a word from attorneys who will take their side.

II.     **Petitioners Require Counsel Even if Respondents' Speculations Regarding the Reach of the DTA Were Ultimately to be Adjudged Accurate**

There are only two possibilities: either the DTA will be found ultimately to apply retroactively to Petitioners' habeas claims or it will not. Under either eventuality, Petitioners need and have a right to be represented by counsel, if for no other reason than to test Respondents' arguments in this regard. Whether they ultimately win or lose, they will need and have a right to counsel in the proceedings. And counsel cannot represent Petitioners if Respondents prevent counsel from meeting, writing to, hearing from or talking with their clients. Petitioners' attorneys must be able to communicate with their clients, and the Protective Order is a prerequisite to that communication because Respondents, who completely control access to the

---

[3] It should be noted that no one, not even the military, could be said to be familiar with the military procedures applied to the Guantanamo detainees, because these were invented after the *Rasul* decision and then modified after the passage of the DTA.

persons of Petitioners, insist on it. Whether or not the DTA is relevant, Petitioners need the Protective Order in place to enable their attorneys to communicate with them.

### III. Petitioners Require Legal Representation Even Under DTA-Based Proceedings

The "alternative" due process that Respondents constructed in the wake of *Rasul* takes the form of Administrative Review Boards ("ARBs") that examine, once annually, each Petitioner's incarceration. Leaving aside for now whether these ARBs are an adequate substitute for habeas actions that have legal rules and procedures to guarantee the due process the Supreme Court found was required, unless and until Petitioners can move forward with their habeas petitions these military ARBs are the sole opportunity that Petitioners have to try to demonstrate that they are innocent of the accusations leveled against them and that their continued detention is therefore improper.

Although Petitioners have few rights under the military's recently-drafted ARB procedures, they are entitled to submit certain limited types of evidence to prove their innocence.

Petitioners, who cannot effectively read or write English and were not permitted any contact with the outside world to research or obtain supporting materials, were confronted with a deadline for submitting written arguments to the ARB. Petitioners' Counsel was, apparently as a matter of grace, permitted by Respondents to submit written arguments to the ARB for their clients. Although any access to the process is better than none, this privilege was largely illusory under the circumstances because the lack of access to the clients prevented counsel from finding out or verifying any of the details of their clients' cases so as to be able to prepare a thorough argument. Petitioners' counsel could therefore submit only generic "placeholder" arguments to

try to gain their clients' freedom. In the absence of a Protective Order allowing them to communicate, Petitioners' counsel are hamstrung in trying to make any effective fact-based arguments for their clients.

Counsel has a continuing ethical obligation to try to assist their clients effectively in these ARB proceedings – the opportunity to submit supporting evidence is open until the ARB sits to consider that detainee's case – and therefore to find out and provide to the ARB any information that would assist their clients in achieving their freedom. Counsel must be able to communicate with their clients to discover this information, and must therefore have the Protective Order to discharge this ethical obligation.

Respondents suggest in passing that Petitioners' attorneys' ethical obligation to represent their clients is "of no consequence here given the Act's withdrawal of the Court's jurisdiction…" [Resp. Mem. in Opp. to Pet. Mot. For Entry of Prot. Order, p. 5 at n5].[5] Petitioners believe that an attorney's ethical obligations are always of consequence. Those ethical obligations require counsel here to communicate with their clients, both to contest Respondents' claims that the DTA moots any previously-filed habeas claims and to assist their clients in the continuing ARB proceedings. Because Respondents control every avenue of communication with Petitioners and insist on a Protective Order, Petitioners' Counsel cannot do any of these things effectively in the absence of that Protective Order. Petitioners therefore respectfully request that this Court enter the Protective Order to allow them, finally, in their fourth year of incarceration, to obtain effective legal representation, prove their innocence, and regain their freedom. The Protective

---

[5] Petitioners cited the U.S. Supreme Court's ruling in *Upjohn Co. v. United States*, 449 U.S. 383, 390-391 (U.S. 1981) ("A lawyer should be fully informed of all the facts of the matter he is handling [in order to serve his client fully]; *quoting* ABA Code of Professional Responsibility, Ethical Consideration 4-1); and, "sound legal advice or advocacy serves public ends [and] such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* at 389.

Order is necessary under any foreseeable scenario and is an essential part of Petitioners' due process rights. Petitioners therefore respectfully request that this Court enter the Protective Order in their cases to allow them to communicate with counsel.

Dated: June 6, 2006

                                              Respectfully submitted,

                                              Baker & McKenzie

                                              By:

                                              /s/George M. Clarke III
                                              George M. Clarke III
                                              (D.C. Bar. No. 480073)
                                              Baker & McKenzie LLP
                                              815 Connecticut Avenue, N.W.
                                              Washington, D.C. 20006-4078
                                              t. 202-452-7068

                                              Counsel for Petitioners